United States District Court
Southern District of Texas
**ENTERED**
September 24, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-19-633-02 |
| | § | |
| FRANCIS EKENE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Francis Ekene ("Defendant") was convicted in this court of health care fraud offenses and sentenced to 120 months in prison.[1] Pending before the court are Defendant's Motion for Appointment of Counsel to Represent Movant with His Motion for Compassionate Release Pursuant to 18 U.S.C. Section 3582(c)(1)(A) and the Amended First Step Act of 2018 ("Defendant's Motion to Appoint Counsel") (Docket Entry No. 389); two Defendant's Motion for Video Conference Hearing in Support of His Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A) [(i)(ii)(iii)] and the Amended First Step Act of 2018 ("Motions for Video Conference Hearing") (Docket Entry Nos. 390, 407); and Defendant's Emergency Motion for Compassionate Release/ Reduction in Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A)

---

[1]Amended Judgment in a Criminal Case, Docket Entry No. 330, pp. 1-3. All page number citations are to the pagination imprinted by the federal court's electronic filing system at the top of the document.

and the Amended First Step Act of 2018 ("Defendant's Motion for Compassionate Release") (Docket Entry No. 391). For the reasons stated below, the court will deny the Motion to Appoint Counsel, both Motions for Video Conference Hearing, and the Motion for Compassionate Release.

## I. Background

Defendant and codefendants were first indicted in this case on August 28, 2019.[2] In an April 6, 2022, Superseding Indictment, Defendant was charged with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1) and six counts of health care fraud in violation of 18 U.S.C. § 1347 (Counts 10-15).[3]

At trial, the Government called a Medicare fraud analyst and a Federal Bureau of Investigation (FBI) agent to testify about the nature and investigation of the health care fraud and conspiracy perpetrated by Defendant and his codefendants.[4] Milten Clinic, Inc. ("Milten") was a purported medical clinic operating from approximately August of 2009 through June of 2016.[5] The Colony

---

[2]Indictment, Docket Entry No. 1.

[3]Superseding Indictment, Docket Entry No. 119, pp. 5, 10-11.

[4]Memorandum Opinion and Order, Docket Entry No. 396 at 2-4. See pp. 2-8 of this Memorandum Opinion and Order for additional discussion of trial testimony about the fraud and conspiracy in which Defendant participated.

[5]Presentence Investigation Report ("PSR"), Docket Entry No. 272, p. 7 ¶ 19.

Healthcare Services, Inc. ("The Colony") was a purported home healthcare agency.[6] Milten operated out of The Colony's offices from approximately December of 2012 through June of 2016.[7] Around the same time, Milten purported to provide medical services and The Colony purported to provide home healthcare services to Medicare beneficiaries.[8] Defendant was a signatory on Milten's accounts.[9] With his codefendants, Defendant conspired to submit false and fraudulent claims to Medicare, conceal the submission of those false and fraudulent claims to Medicare and the receipt and transfer of the proceeds of the fraud, and divert the fraud's proceeds for personal use and benefit.[10] Defendant also paid patient recruiters unlawful kickbacks to solicit Medicare beneficiaries for home healthcare services regardless of whether they needed such services.[11] Defendant also paid codefendants who were physicians to sign false and fraudulent medical forms on Milten's behalf.[12] The Colony billed $4,471,213.95 to Medicare, and Medicare paid $4,535,638.97.[13] Ekene signed 1,235 checks from a

---

[6] Id. at 8 ¶ 20.

[7] Id. ¶ 21.

[8] Id. ¶¶ 22-23.

[9] Id. ¶ 25.

[10] Id. at 9 ¶ 35.

[11] Id. ¶ 40.

[12] Id. at 10 ¶ 44.

[13] Id. at 12 ¶ 58.

Milten bank account totaling $1,433,788.94, almost all of which ($1,416,952.35) were Medicare deposits.[14] Among these checks, 246 totaling $285,368.60 were written to Defendant's family members and business.[15] Based on the evidence regarding Defendant's conduct for Milten, Defendant participated in fraudulently billing $2,090,903.58, of which Medicare paid $1,255,079.71.[16]

This and other evidence presented at trial led the jury to find Defendant guilty on all counts — 1 and 10 through 15.[17] Defendant filed a Rule 29(c) Motion for Judgment of Acquittal, arguing that the Government did not present any evidence that Defendant entered into a conspiracy or knew about one.[18] The court denied the motion.[19]

Defendant did not file objections to the PSR but did file a sentencing memorandum.[20] The court sentenced Defendant to 120 months in prison.[21]

After sentencing, Defendant requested a hearing to determine his eligibility for court-appointed appellate counsel and to

---

[14] Id. at 13 ¶ 60.

[15] Id. at 13-14 ¶¶ 60, 64.

[16] Id. at 29 ¶ 94.

[17] Verdict, Docket Entry No. 161, pp. 1-2.

[18] Francis Ekene's Motion for Acquittal, Docket Entry No. 177, pp. 2-3.

[19] Order, Docket Entry No. 209.

[20] Defendant's Sentencing Memorandum, Docket Entry No. 275.

[21] Judgment in a Criminal Case, Docket Entry No. 302, p. 3.

proceed in forma pauperis.²²  After holding a hearing the court granted Defendant's requests.²³

On appeal, Defendant argued that the court misapplied the guidelines calculations when the court used the intended rather than actual loss amount under the guidelines commentary.²⁴  He also argued that the court incorrectly applied the enhancements under Fed. Sent. Guide. § 2B1.1(b)(2)(A)(i) for an offense involving more than 10 victims and that the restitution order was erroneous because Medicare cannot be a victim for the purposes of the Mandatory Victims Restitution Act.²⁵  On September 7, 2023, the Fifth Circuit affirmed Defendant's conviction and sentence.²⁶

On August 9, 2024, Defendant filed a Motion to Appoint Counsel, First Motion for Video Conference Hearing, and Motion for Compassionate Release.²⁷  The Government responded to Defendant's Motions for Compassionate Release and for a Video Conference Hearing, and Defendant replied.²⁸  On March 10, 2025, Defendant

---

²²Notice of Appeal, Docket Entry No. 308.

²³Order, Docket Entry No. 316.

²⁴Opinion, Docket Entry No. 361 at 2.

²⁵Id. at 3.

²⁶Id. at 4.

²⁷Docket Entry Nos. 389, 390, and 391.

²⁸Government's Response to Defendant's Motion for Compassionate Release, Docket Entry No. 393; United States' Statement of No Objection to Defendant's Motion for Hearing, Docket Entry No. 394; Defendant's Reply to the Government's Motion to His Motion for Compassionate Release Reduction in Sentence ("Defendant's Reply to
(continued...)

filed a second Motion for a Video Conference Hearing and an addendum to his Motion for Compassionate Release.[29] Defendant also filed medical records in support of his Motion for Compassionate Release and addendum.[30] After the court struck the Government's response to Defendant's addendum, the Government filed a renewed response.[31] Defendant replied to the Government's original response and filed a letter in support of his original Motion for Compassionate Release.[32]

## II. Legal Standards

In United States v. Jackson, 27 F.4th 1088, 1089 (5th Cir. 2022), the court stated the requirement for obtaining compassionate release under § 3582(c):

---

[28](...continued) Government's Response re Compassionate Release"), Docket Entry No. 398.

[29] Second Defendant's Motion for Video Conference Hearing, Docket Entry No. 407; Defendant/Movant's Addendum in Support of His Compassionate Release/Reduction in Sentence ("Defendant's Addendum"), Docket Entry No. 408.

[30] Defendant/Movant's Medical Records in Support of His Addendum and His Motion for Compassionate Release/Reduction in Sentence ("Medical Records"), Docket Entry No. 412.

[31] Government's Opposed Response to Defendant's Addendum to the Motion for Compassionate Release, Docket Entry No. 416; Order Striking Document, Docket Entry No. 421; Government's [Renewed] Opposed Response to Defendant's Addendum to the Motion for Compassionate Release ("Renewed Response to Addendum re Compassionate Release"), Docket Entry No. 425.

[32] Defendant/Movant's Reply to the Government's Response in Opposition to Defendant's Addendum to His Motion for Compassionate Release ("Defendant's Reply to Government's Response to Addendum"), Docket Entry No. 423; Letter in Support of Motion for Compassionate Release, Docket Entry No. 426.

> . . . [A] prisoner seeking compassionate release must overcome three hurdles. First, "extraordinary and compelling reasons" must justify the reduction of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A). Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). Id. "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction." Ward v. U.S.A., 11 F.4th 354, 360 (5th Cir. 2021).

"[E]xtraordinary [] mean[s] beyond or out of the common order, remarkable, and [is] synonymous with singular." United States v. Escajeda, 58 F.4th 184, 186 (5th Cir. 2023) (quoting Webster's New International Dictionary 903 (2d. ed. 1934; 1950)) (internal quotation marks omitted).

The § 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established for–
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
>
> * * *
>
> (5) any pertinent [Sentencing Commission] policy statement–
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III. Analysis

**A. Defendant's Motion to Appoint Counsel**

Defendant filed a pro se motion to appoint counsel to assist him with seeking compassionate release or a sentence reduction.[33] There is no constitutional right to appointed counsel in post-conviction proceedings. Pennsylvania v. Finley, 107 S. Ct. 1990, 1993 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); see United States v. Vasquez, Criminal No. 2:18-1282-S-1, 2020 WL 3000709, *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). This case is not complex

---

[33]Defendant's Motion to Appoint Counsel, Docket Entry No. 389.

and involves an established area of the law. Defendant has done a capable job representing himself and has not offered any compelling justification for the appointment of counsel.[34]

Accordingly, the court will deny Defendant's Motion to Appoint Counsel.

## B.   Motion to Reduce Sentence Under 18 U.S.C. §§ 3582(c)(1)(A)

Defendant argues that the court should reduce his sentence based on "extraordinary and compelling reasons" under § 3582(c)(1)(A).[35] Extraordinary and compelling reasons generally include medical circumstances, age, family circumstances, abuse, or other reasons of comparable gravity. See United States v. Chambliss, 948 F.3d 691, 693-94 (5th Cir. 2020) (affirming the district court's finding that a prisoner's terminal illness qualified as an extraordinary and compelling reason under § 3582(c)(1)(A), but that the circumstances still did not warrant a reduction in sentence); see also U.S.S.G. § 1B1.13(b), p.s. (2023) (listing circumstances under which extraordinary and compelling reasons may exist). Although Defendant seeks relief based on his medical conditions and age, his arguments do not qualify as an "extraordinarily severe exigency, not foreseeable at

---

[34] Id. at 1-2.

[35] See generally Defendant's Motion for Compassionate Release, Docket Entry No. 391; Defendant's Reply to Government's Response re Compassionate Release, Docket Entry No. 398; Defendant's Addendum, Docket Entry No. 408; Defendant's Reply to Government's Response to Addendum, Docket Entry No. 423.

the time of sentencing, and unique to the life of the prisoner." Escajeda, 58 F.4th at 186.[36]

### 1. Medical Conditions

Defendant cites a "rapid deterioration in health" that makes him "exceptionally vulnerable" to catching the COVID-19 virus.[37] Specifically, Defendant "suffers from" a number of diseases that weaken his immune system, including "Vitamin D deficiency, anemia, diabetes, hyperlipidemia, hypertension, Stage IV Chronic Kidney Disease (CDK), [] status post cerebrovascular accidents (CVA), [and] (strokes) in 2011 and 2012" that partially paralyzed his right side and left him in need of a wheelchair.[38] Defendant argues that the adequacy of the medical care he is receiving "is questionable at best," and he "would receive better medical care at a hospital in his own community" where his family can take care of him.[39] In an addendum to his motion, Defendant notified the court that he had suffered a heart attack that required open heart surgery and double pneumonia, increasing his risk of contracting the flu and RSV, in addition to COVID-19.[40] Defendant argues that

---

[36]Government's Response to Defendant's Motion for Compassionate Release, Docket Entry No. 393, pp. 4-5.

[37]Defendant's Motion for Compassionate Release, Docket Entry No. 391, pp. 1-2.

[38]Id. at 3, 11.

[39]Defendant's Reply to Government's Response re Compassionate Release, Docket Entry No. 398, pp. 2-3.

[40]Defendant's Addendum, Docket Entry No. 408, pp. 1, 3.

his vaccination against COVID-19 does not protect him from being high-risk, especially while he lives in the Federal Medical Center surrounded by sick inmates.[41]

Defendant's concerns about catching COVID-19 are not a basis for relief under § 3582(c)(1)(A). See United States v. McMaryion, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) ("We have repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health."). The Fifth Circuit has denied compassionate release to other prisoners fearful of contracting COVID-19 due to similar stroke and cardiac illnesses suffered by Defendant. See United States v. Thompson, 984 F.3d 431, 432-34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned about COVID-19); United States v. Rodriquez, 27 F.4th 1097, 1100-1101 (5th Cir. 2022) (denying relief where COVID-19 fearing movant suffered from heart failure).

Moreover, Defendant's underlying medical conditions, though numerous and serious, do not constitute an extraordinary and compelling reason to reduce Defendant's sentence. The comments to the United States Sentencing Guidelines describe two circumstances when a "'[m]edical [c]ondition' might be sufficiently serious to warrant release." Thompson, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13 cmt. n.1(A)) (cleaned up). These are when the defendant

---

[41]Defendant's Motion for Compassionate Release, Docket Entry No. 391, p. 2.

has (1) a terminal illness or (2) "a condition that substantially diminishes the ability of the defendant to provide self-care." Id. (internal quotation marks omitted). None of Defendant's illnesses satisfy these two conditions.[42] Although chronic, his illnesses such as diabetes, hypertension, and advanced kidney disease are not terminal. Defendant's need for a wheelchair and the added complications of a heart attack, invasive surgery, and double pneumonia are more "commonplace" than "extraordinary." Thompson, 984 F.3d at 434. Moreover, Defendant is receiving sufficient medical care, including routine doctor appointments and medications that effectively manage his conditions.[43] Even if the Defendant could receive more effective medical care somewhere other than the Bureau of Prisons, that possibility is not enough to warrant compassionate release. United States v. Rollins, 53 F.4th 353, 359-60 (5th Cir. 2022) (upholding denial of compassionate release even though the evidence "indicates that the prison system is not the place that can provide medical care most effectively").

2. Age

The commentary to the policy statement that elaborates on § 3582(c)(1)(A)(i) says Defendant's age may be considered an "extraordinary and compelling" reason if "[t]he defendant (A) is at

---

[42] Id. at 3, 11.

[43] Government's Response to Defendant's Motion for Compassionate Release, Docket Entry No. 393, pp. 7-8; Medical Records, Docket Entry No. 412, pp. 3-153; Defendant's Reply to Government's Response to Addendum, Docket Entry No. 423, pp. 6-9.

least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). Although Defendant alludes to these provisions as additional reasons for granting him compassionate release, he does not actually argue that they apply to him.[44] As the Government states, these provisions do not apply to Defendant because he has not served at least 10 years or 75 percent of his term of imprisonment.[45]

### 3. The § 3553(a) Factors

Turning to the factors under § 3553(a), the court first considers the nature and circumstances of the offense. See 18 U.S.C. § 3553(a)(1). Defendant was a direct participant in a years-long conspiracy to defraud Medicare of millions of dollars.[46] As the "acting" owner of Milten, Defendant exercised ultimate decision-making authority and controlled all of Milten's finances.[47] He used this role to receive a larger share of the illegally

---

[44]Defendant's Motion for Compassionate Release, Docket Entry No. 391, p. 7.

[45]Government's Response to Defendant's Motion for Compassionate Release, Docket Entry No. 393, pp. 8-9; Renewed Response to Addendum re Compassionate Release, Docket Entry No. 425, pp. 1-2.

[46]PSR, Docket Entry No. 272, pp. 29-30 ¶¶ 94-100.

[47]Id. at 30 ¶ 99.

obtained profits.[48] Defendant also paid recruiters and physicians to participate in the scheme.[49] Defendant's active role in such a serious offense, including the financial gains to him and his family, make a sentence reduction inappropriate.

Based on these serious circumstances, the court finds that the original sentence satisfies the fairness, deterrence, and public protection considerations of §§ 3553(a)(2)(A)-(C). Defendant argues that he has no prior criminal record, has not had disciplinary issues while incarcerated, and does not pose a danger to society.[50] Defendant also urges that he "will certainly not have any contact or communication with the people that got him entangled with the charges and convictions" and "is fully committed to leading a law-abiding life . . . ."[51] While the court appreciates Defendant's commitments, they are not enough to outweigh the court's obligation to "promote respect for the law," "provide just punishment," and deter criminal conduct. 18 U.S.C. §§ 3553(a)(2)(A)-(B). Defendant's original sentence accomplishes these goals, while punishing Defendant commensurate with his serious offenses.

For the reasons explained above, the court does not need to reduce Defendant's sentence to provide him necessary or most effective medical care. See § 3553(a)(2)(D).

---

[48]Id.

[49]Id. at 9-10 ¶¶ 40, 44.

[50]Defendant's Motion for Compassionate Release, Docket Entry No. 391, pp. 9-10, 12.

[51]Id. at 10.

Finally, the court is not persuaded that Defendant's original sentence flouts the sentencing guidelines, related policies, or sentences given to similarly situated defendants. See 18 U.S.C. § 3553(a)(3)-(6). Defendant does not argue that these specific factors weigh in his favor,[52] and the Government notes only that reducing Defendant's sentence "would ignore the sentencing guidelines and result in a sentence dramatically less than the 151 to 181-month sentence those guidelines recommended."[53] Defendant received a sentence below that guideline range and consistent with his codefendants' sentences based on their roles in the conspiracy and fraud.[54] The court concludes that the § 3553(a) factors weigh against granting Defendant's motion.

Because the court concludes that a sentence reduction is not warranted, the court will also deny Defendant's alternative request to serve the remainder of his sentence in home confinement.[55] See United States v. Chaney, 823 F. App'x 278, 279 (5th Cir. 2020) (per curiam).

---

[52]Defendant's Reply to Government's Response re Compassionate Release, Docket Entry No. 398, pp. 3-4; Defendant's Reply to Government's Response to Addendum, Docket Entry No. 423, p. 2.

[53]Government's Response to Defendant's Motion for Compassionate Release, Docket Entry No. 393, pp. 9-10.

[54]Statement of Reasons, Docket Entry No. 303, p. 3 ¶¶ VI.A.&C.

[55]Defendant's Reply to Government's Response to Addendum, Docket Entry No. 423, p. 1; Renewed Response to Addendum re Compassionate Release, Docket Entry No. 425, p. 2.

## C.  Motions for Video Conference Hearing

Defendant filed two Motions for Video Conference Hearing in support of his Motion for Compassionate Release.[56] Because the court will deny the Motion for Compassionate Release, an oral hearing is unnecessary. Accordingly, Defendant's Motions for Video Conference Hearing will be denied.

## IV.  Conclusion

Because Defendant has failed to show any extraordinary and compelling reasons for a sentence reduction and because the § 3553(a) factors make a reduction inappropriate, Defendant's Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. Section 3582(c)(1)(A) and the Amended First Step Act of 2018 (Docket Entry No. 391) is **DENIED**. Furthermore, for the reasons set forth above, Defendant's Motion to Appoint Counsel (Docket Entry No. 389) and Motions for Video Conference Hearing (Docket Entry Nos. 390, 407) are **DENIED**.

**SIGNED** at Houston, Texas, on the 24th day of September, 2025.

*/s/ Sim Lake*

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[56]First Motion for Video Conference Hearing, Docket Entry No. 390; Second Motion for Video Conference Hearing, Docket Entry No. 407.